# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| DODS, Inc. ) | ASBCA No. 59510 |
| ) | |
| Under Contract No. SPM4A7-09-M-B426 ) | |

APPEARANCE FOR THE APPELLANT:    Mr. David Storey
                                President

APPEARANCES FOR THE GOVERNMENT:   E. Michael Chiaparas, Esq.
                                  DCMA Chief Trial Attorney
                                 Douglas R. Jacobson, Esq.
                                  Trial Attorney
                                  Defense Contract Management Agency
                                  Bloomington, MN

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL
## PURSUANT TO BOARD RULE 12.3

### INTRODUCTION

Appellant, DODS, Inc. (DODS), seeks $18,470.53 in termination settlement costs, appealing from the deemed denial of its 1 May 2014 certified claim for that sum certain. DODS has elected to proceed pursuant to Board Rule 12.3, and the parties have elected to proceed without a hearing, pursuant to Board Rule 11. We sustain the appeal in part and award $2,792.55, plus interest.

### SUMMARY FINDINGS OF FACTS

In July 2009, DODS and the Defense Supply Center, Richmond, Virginia (government), entered into Contract No. SPM4A7-09-M-B426 for DODS to supply "aircraft formers," including a first article for testing, for a total contract award of $6,400 (R4, tab 1 at 1, 4). The first article was priced at $1,800 (*id.* at 9), and each of the four aircraft formers that the contract contemplated DODS would deliver subsequent to first article testing was priced at $1,150 (*id.* at 8). DODS never submitted a first article for approval (*see* app. supp. R4, tab A184).

On 13 June 2011, the government terminated the contract for default (R4, tab 2 at 16). On 11 June 2012, we converted the termination for default to a termination for

convenience of the government. *DODS, Inc.*, ASBCA 57667, 12-2 BCA ¶ 35,078 at 172,281. On 18 December 2012, we denied the government's motion to reconsider our decision to convert the termination. *DODS, Inc.*, ASBCA 57667, 13 BCA ¶ 35,203 at 172,716.

On 11 March 2013, DODS submitted to the contracting officer a termination settlement proposal (Standard Form 1435) requesting $18,470.53 (R4, tab 8). After over a year of correspondence including regarding whether DODS had provided the government sufficient information to support that request (R4, tabs 9, 11-17), on 1 May 2014, DODS submitted to the contracting officer a certified claim for $18,470.53 (R4, tab 18; gov't br. at 16, ¶ 56), the same amount set forth in the 11 March 2013 settlement proposal. Although the contracting officer never issued a decision on the 1 May 2014 claim, the parties agree that they are at an impasse (Bd. corr. file, 8 October 2014 memorandum of telephonic conference). We find that by 1 May 2014, when DODS submitted its certified claim to the contracting officer, the parties had reached an impasse, establishing the Board's jurisdiction to entertain this appeal. *Cf. Central Environmental, Inc.*, ASBCA No. 51086, 98-2 BCA ¶ 29,912 at 148,080 (impasse including where 14 months had passed since appellant submitted settlement proposal, and where appellant had requested contracting officer's final decision 4 months after submitting proposal).

The contract includes Federal Acquisition Regulation (FAR) clause 52.249-1, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SHORT FORM) (APR 1984) (R4, tab 1 at 15), which provides:

> The Contracting Officer, by written notice, may terminate this contract, in whole or in part, when it is in the Government's interest. If this contract is terminated, the rights, duties, and obligations of the parties, including compensation to the Contractor, shall be in accordance with Part 49 of the Federal Acquisition Regulation in effect on the date of this contract.

## DECISION

DODS bears the burden to prove by a preponderance of the evidence that it is entitled to a greater termination settlement amount than that determined by the contracting officer. *See General Dynamics Land Systems, Inc.*, ASBCA No. 52283, 02-1 BCA ¶ 31,659 at 156,411. Here, having not issued any decision, the contracting officer did not determine a settlement amount; therefore, DODS bears the burden of proving entitlement to any amount. A convenience termination converts a fixed-price

2

contract into a cost-reimbursement contract, entitling the contractor to recover its allowable costs in accordance with the standards of reasonableness, allocability, and regulatory cost principles, as applicable, plus profit. *Id.* Pursuant to FAR 49.207, Limitation on settlements, "[t]he total amount payable to the contractor for a settlement, before deducting disposal or other credits and exclusive of settlement costs, must not exceed the contract price less payments otherwise made or to be made under the contract."

*Claimed Termination for Convenience Settlement Costs*

DODS seeks the following (R4, tab 8 at 41):

| | |
|---|---|
| Metals: | $880.00 |
| Work-in-Progress: | $2,679.25 |
| Other Costs: | $154.64 |
| General & Administrative Expenses (G&A) | $9,147.27 |
| Profit: | $1,905.98 |
| Settlement Expenses: | $3,791.39 |
| Subtotal: | $18,558.53 |
| Less Disposal and Other Credits | ($88.00) |
| Total: | $18,470.53 |

*Metals and "Other Costs"*

DODS seeks $880 for four sheets of metal ($220 per sheet) paid for by TTF, L.L.C. (TTF), (minus a 10%, $88.00 credit), as well as $154.64 in "Other Costs"; namely, the cost of delivery of those sheets to TTF by FedEx (R4, tab 8 at 41-50, 128). We have found that "there is no practical distinction between TTF and DODS." *DODS*, 13 BCA ¶ 35,203 at 172,711. We further find that one of the sheets "was consumed in the manufacturing process of the First Article" (app. supp. R4, tab A210), leaving three sheets of residual equipment with a value of $660. The government invokes the limitation in FAR 31.205-42(a), "*Common items*," that "[t]he costs of items reasonably usable on the contractor's other work shall not be allowable unless the contractor submits evidence that the items could not be retained at cost without sustaining a loss." The burden is on a contractor to demonstrate that it could not retain the residual equipment at cost for use on other work without sustaining a loss. FAR 31.205-42(a), Termination costs; *see Essex Electro Engineers, Inc.*, DOT CAB Nos. 1025, 1119, 81-1 BCA ¶ 14,838 at 73,250 (citing former FPR 1-15.205-42(a) which was essentially identical to FAR 31.205-42(a)), *aff'd on recon.*, 81-1 BCA ¶ 15,109, *aff'd*, 702 F.2d 998 (Fed. Cir. 1983). DODS makes no such showing. We award only the $220 cost of the

3

sheet that was consumed related to first article testing, as well as the $154.64 FedEx delivery cost.[1]

*Work-in-Progress*

DODS seeks $2,679.25 for "Work-in-Progress," consisting of direct labor costs (R4, tab 8 at 41-42). The government does not dispute that those costs were incurred performing work on the contract, but contends that they are not reasonable, including because DODS did not even produce the first article, which was priced only at $1,800. Indeed, the government invokes FAR 49.207, Limitation on settlements, which provides that "[t]he total amount payable to the contractor for a settlement, before deducting disposal or other credits and exclusive of settlement costs, must not exceed the contract price less payments otherwise made or to be made under the contract." However, $1,800 was not the price of the contract (the contract price was $6,400) but the price of one of the contract's line items; namely, first article testing (R4, tab 1 at 1, 9). *See Concord Electric Co.*, ASBCA No. 31012, 85-3 BCA ¶ 18,484 at 92,844-45.

Nevertheless, we agree that $2,679.25 in direct labor costs, given the circumstances, is not reasonable. In its settlement proposal to the contracting officer (Standard Form 1435), DODS proposed a 15% profit (R4, tab 8 at 41, line 11); from that we infer that DODS contemplated earning 15% profit on the $6,400 contract ($960), leaving $5,440 for costs ($6,400 minus $960). In its settlement proposal, DODS also proposed 257% G&A (R4, tab 8 at 42); from that we infer that DODS also expected that it would incur $2.57 in indirect costs for each $1.00 in direct costs, or

---

[1] Although neither party addresses it, the contract includes FAR 52.209-4, FIRST ARTICLE APPROVAL – GOVERNMENT TESTING (SEP 1989) (R4, tab 1 at 13), which provides, at paragraph (h):

> Before first article approval, the acquisition of materials or components for, or the commencement of production of, the balance of the contract quantity is at the sole risk of the Contractor. Before first article approval, the costs thereof shall not be allocable to this contract for (1) progress payments, or (2) termination settlements if the contract is terminated for the convenience of the Government.

The record does not establish whether any of the residual three sheets of metal was for production, or whether any exception to FAR clause 52.209-4(h) applies. *See Switlik Parachute Co.*, ASBCA No. 18024, 75-2 BCA ¶ 11,434 at 4,438-40. For these reasons, we do not rely upon that clause.

4

approximately $3,920 in indirect costs and approximately $1,520 in direct costs for the entire contract work; otherwise it would not have expected to earn 15% profit. Because DODS spent $1,034.64 procuring metal for the work ($880.00 in material plus $154.64 for its delivery), that leaves approximately $485 ($1,520 minus $1,035) for direct labor costs. The contract work consisted of a first article and four aircraft forms; DODS produced none of those yet spent $2,679.25 – approximately 552% more ($2,679.25 divided by $485.00) than it must have contemplated spending on the entire contract work – on direct labor costs. Without any evidence in the record regarding what economies of scale DODS might have achieved had it passed first article testing, we find, using a jury verdict approach, that awarding $300 in direct labor costs is reasonable given the circumstances.

*G&A*

DODS seeks $9,147.27 in G&A expenses, consisting of 257% of the sum of $880 in materials and $2,679.25 in direct labor costs (R4, tab 8 at 41-42). There being no evidence in the record demonstrating the calculation of that particular rate, but having found that there is no practical difference between DODS and TTF, 13 BCA ¶ 35,203 at 172,711, we adopt the comparable, 227.19% G&A rate computed for TTF's CY 2011 by the Defense Contract Audit Agency in Audit Report No. 01241-2012W17100001, which appears in the record (app. supp. R4, tabs A369, A384).[2] Applying that rate to the materials and direct labor costs that we award, the result is an award of $1,181.39 in G&A expenses ($220 plus $300 equals $520 times 2.2719).

*Profit*

DODS seeks $1,905.98 in profit; that is, 15% of the sum of materials, direct labor costs, and G&A (R4, tab 8 at 41-42). The government contends that no profit is allowable, pursuant to FAR 49.203(a), Adjustment for loss, which provides for the disallowance of profit "if it appears that the contractor would have incurred a loss had the entire contract been completed." It does so appear. According to DODS's figures, it spent $9,506.93, much more than the $6,400.00 contract price, without having produced anything. Consequently, DODS is not entitled to profit.

---

[2] Because we have found that "there is no practical distinction between TTF and DODS." *DODS*, 13 BCA ¶ 35,203 at 172,711, we include the audit report in the Rule 4 file over the government's objection.

*Settlement Expenses*

DODS seeks $3,791.39 in "Settlement Expenses," consisting of $936.52 that the government does not dispute (gov't br. at 28), and $2,854.87 in expenses spent litigating ASBCA No. 57667 (R4, tab 8 at 43). The latter are not allowable, pursuant to FAR 31.205-47(f)(1), Costs related to legal and other proceedings, because they were incurred in connection with "[d]efense against Federal Government claims or appeals or the prosecution of claims or appeals against the Federal Government." We find that DODS is entitled to the $936.52 that the government does not dispute.

*Termination for Convenience Settlement Costs as Found by the Board*

For the above reasons, we award DODS the following:

| | |
|---|---|
| Metals: | $220.00 |
| Work-in-progress: | $300.00 |
| Other costs: | $154.64 |
| G&A | $1,181.39 |
| Settlement expenses: | $936.52 |
| Total: | $2,792.55[3] |

## CONCLUSION

The appeal is sustained in part and DODS is awarded $2,792.55, plus interest pursuant to the Contract Disputes Act, 41 U.S.C. § 7109, from Monday, 5 May 2014, the putative date that the contracting officer received DODS's 1 May 2014 claim, until the date of payment.

Dated: 12 March 2015

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

(Signature continued)

---

[3] Because we do not allow the cost of the residual metal, we do not apply the 10% materials credit that DODS included in its claim (R4, tab 8 at 41, 43, 128).

6

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 59510, Appeal of DODS, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

7